### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LINDA MEDLEY,

      Plaintiff,

v.                                 Case No: 8:16-cv-2534-CEH-CPT

DISH NETWORK, LLC,

      Defendant.

_____/

## O R D E R

This matter comes before the Court on the parties' cross motions for summary judgment. Docs. 117, 119. Defendant DISH Network L.L.C. ("DISH" or "Defendant") moves for summary judgment and argues that Plaintiff cannot show that DISH actually knew that it was attempting to collect an invalid debt while Plaintiff was represented by counsel with respect to that debt. Doc. 117. Plaintiff Linda Medley ("Medley" or "Plaintiff") moves for partial summary judgment on her claims under the Florida Consumer Collection Practices Act ("FCCPA") and also argues that DISH's bona fide error affirmative defense fails as a matter of law. Doc. 119. The Court, having considered the cross motions and being fully advised in the premises, will deny DISH's Motion for Summary Judgment and grant-in-part and deny-in-part Plaintiff's Motion for Partial Summary Judgment.

I.    **BACKGROUND**[1]

    A.    **Stipulated Factual Background (Doc. 124)**

On April 15, 2013, Medley and DISH entered into a "Digital Home Advantage Plan Agreement" ("DHA Agreement"), a Service Agreement, and a Residential Customer Agreement. Doc. 124 ¶ 1; Doc. 31-3 at 2–19. Medley's DISH account number ended in "8000." *Id.* As part of the DHA Agreement, DISH agreed to provide Medley satellite television services and equipment for a twenty-four (24) month term in exchange for monthly payments from Medley. *Id.* When Medley entered into the DHA Agreement, she provided the telephone number 727-XXX-2894. *Id.* ¶ 2. Medley is the owner of a cellular telephone with the assigned number 727-XXX-9414. *Id.* ¶ 3.

On March 14, 2014, Medley called DISH from the "9414" cell number and was ultimately enrolled in the "DISH Pause" program, which allowed Medley to suspend DISH services under the DHA Agreement for up to nine (9) months for a monthly payment of five dollars ($5.00) plus tax. *Id.* ¶ 4. On April 18, 2014, Medley called DISH from the "9414" number and stated she intended to file for bankruptcy. *Id.* ¶ 5. During this call, the "9414" number was provided to DISH. *Id.* Medley could not afford to pay the early termination fees provided under the DHA Agreement, and therefore, she did not immediately cancel her services. *Id.* ¶ 6.

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the parties' stipulation of agreed material facts (Doc. 124), depositions, affidavits and attachments thereto. For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party, as required by Fed. R. Civ. P. 56.

On May 26, 2014, Medley filed a verified Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Middle District of Florida, Tampa Division identified by case number 8:14-bk-05961-CPM ("Bankruptcy Case"). *Id.* ¶ 7. Medley listed "DISH TV" as an unsecured creditor on Schedule F of her Petition, listed "Satellite Service," and listed an amount of $831.74. *Id.* ¶ 8. On August 26, 2014, the Bankruptcy Court entered a Discharge of Debtor order in Medley's Bankruptcy Case ("Discharge Order"). *Id.* ¶ 9; Doc. 2 at 25.

On October 15, 2014 and December 30, 2014, counsel for Medley sent a fax transmission to the fax number 303-723-3559, which number is owned by DISH. Doc. 124 ¶¶ 10, 13.

On or about October 24, 2014; November 3, 2014; December 3, 2014; January 14, 2015; and February 14, 2015, DISH sent Medley billing notifications. Doc. 124 ¶ 11; *see also* Doc. 2 at 33, 35, 37, 44, 46.

On or about October 24, 2014; November 17, 2014; November 26, 2014; December 15, 2014; December 18, 2014; and January 16, 2015, DISH made telephone calls to the "9414" number using a prerecorded voice. Doc. 124 ¶ 12.

**B.     Counsel's faxed letters of representation**

The fax letter sent to DISH was on counsel's letterhead and referenced an account number ending in "8000." Doc. 2 at 30, 39. The fax states in relevant part:

> Collections Representative:
>
> Please be aware that this law firm (see above contact information) represents Linda Medley with regard to her debts generally (i.e., for the purpose of settling ALL of her debts for filing

a bankruptcy), including the above listed account and any other accounts of debts which you or your agency is attempting to collect from our client(s). Any further communication with our client(s) will be in violation of Fla. Stat. § 559.72(18), which provides in part that:

> "[I]n collecting consumer debts, no person shall communicate with the debtor if that person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of … such attorney's name and address."

Doc. 2 at 30, 39. The letters are dated October 15, 2014 and December 30, 2014. *Id.*

### C.    The Pause Feature

DISH's Pause feature allows DISH customers to temporarily suspend their programming, although the account remains active. Doc. 117-2 ¶ 7. Plaintiff's Agreement with DISH states, "If you participate in DISH Pause or any other program that allows you to temporarily suspend your DISH service at any time during your term commitment, your term commitment will be extended by the number of days that your service is suspended." Doc. 117-3 at 3. The Residential Customer Agreement provides for a monthly fee of $5.00 to participate in DISH Pause. *Id.* at 19.

### D.    Joey Montano affidavit (Doc. 117-2)

According to DISH's business operations manager, Joey Montano, DISH automatically generated its standard monthly Pause charges and emailed those to Plaintiff on October 4, 2014; October 24, 2014; November 3, 2014; December 3, 2014; January 14, 2014; and February 4, 2015 for those respective billing periods. Doc. 117-2 ¶ 19. The first email was generated before DISH received the first fax from Plaintiff's counsel on October 15, 2014. *Id.* The telephone call log (Doc. 117-10 at 3) shows the

4

outbound call activity related to Plaintiff's account. Doc. 117-2 ¶ 22. DISH called Plaintiff on November 26, 2014, regarding the Pause debt. *Id.* ¶ 20.  According to Montano, "[n]o other debt related calls exist." *Id.*

Montano states "Plaintiff's relationship with DISH survived her bankruptcy because she never canceled her account." *Id.* ¶ 12. After Plaintiff filed for bankruptcy on May 26, 2014, Plaintiff kept DISH's television equipment, which Montano states showed her intention to reactivate her services. *Id.* ¶ 10. Filing for bankruptcy does not automatically cancel a DISH customer's account. *Id.* ¶ 11.

### E.    Sharon Picchione Affidavit (Doc. 117-8)

Picchione is DISH's vice president of billing and credit. Doc. 117-8 ¶ 2. She provides an affidavit on DISH's behalf stating that if DISH receives notification of a customer's bankruptcy discharge, DISH will write off that debt. *Id.* ¶ 3. If DISH receives a fax notifying it that a customer is represented by counsel regarding a debt, DISH will record the request in its account notes and not contact that customer regarding that debt. *Id.* ¶ 4. DISH received three of the same faxes from Plaintiff's counsel that were dated October 15, 2004; December 30, 2015; and February 16, 2015. *Id.* ¶ 5. Upon receipt of the faxes, a DISH customer service representative determined that the bankruptcy analyst should assess the fax. *Id.* The bankruptcy specialist pulled up Plaintiff's account and saw the bankruptcy discharge. *Id.* As a result, according to Picchione, "DISH wrote off the discharged debt." *Id.* Because the fax stated that Plaintiff retained counsel "for the purpose of settling all of her debts for filing a

5

bankruptcy," and not with respect to the Pause charges, Picchione states that DISH did not contact Plaintiff with regard to her discharged bankruptcy debt. *Id.* ¶ 6.

### F.    DISH account notes (Doc. 51-5 at 4–5)

The account notes for Medley's account reflect that it was activated on April 15, 2013. Doc. 51-5 at 8. On March 14, 2014, the "DISH Pause" Disclosures were read and accepted. *Id.* at 5. In a telephone call on April 18, 2014, the notes reflect Plaintiff needed to cancel her service, that she is aware of the early termination fee, and that she is filing bankruptcy. *Id.* Plaintiff was inquiring as to what paperwork needed to be provided for her bankruptcy and regarding the early termination fee. *Id.* On the same date later in the evening, an account note documents Plaintiff wanted to cancel her service and she was filing bankruptcy. *Id.* Plaintiff was advised she needed to send documents first but then the call was disconnected. *Id.*

The following account notes discuss Plaintiff's bankruptcy:

6/13/2014  Q1Z   ###Chapter 7 Bankruptcy Filed 20140526###Write off not applied###Case #1405961 Please note that a discharge has not been received at this time. The account will be monitored and written off when discharge granted.******

08/23/2014  Q1Z   ***Bankruptcy filed 20140526###wrote off eligible amount as part of the new bankruptcy clean up process### Please note that a discharge has not been received at this time. If the bankruptcy is dismissed or closed, the credit will be reversed.******

09/15/2014  Q1Z   ***Chapter 7 bankruptcy filed 20140526###Case #1405961 was discharged in the state of Middle District of FL***0 was written off under the bankruptcy. Cust responsible for all charges after the file date. B&C/Bankruptcy***

*Id.* at 5.

After the bankruptcy discharge in August 2014, the account notes reflect that Estatements billing Plaintiff for the Pause charges were sent to Plaintiff on 9/3/2014, 10/4/2014, 11/3/2014, 12/3/2014, 1/3/2015, and 1/14/2015. *Id.* at 4. Delinquency notification emails were sent 12/4/2014, 12/13/2014, 12/16/2014, 12/20/2014, and 1/9/2015. *Id.*

### G.   Procedural Background

Plaintiff initiated this action in state court in July 2016 against DISH alleging state and federal causes of action under the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes ("FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Doc. 2. DISH removed the case to this Court in August 2016. Doc. 1. In August 2018, the Court granted summary judgment in DISH's favor. Doc. 85. Plaintiff appealed (Doc. 87), and on May 4, 2020, the Eleventh Circuit affirmed in part, reversed in part, and remanded the case to this Court. Doc. 95. Specifically, the Eleventh Circuit affirmed summary judgment in favor of DISH on the Plaintiff's TCPA claim and reversed summary judgment in favor of DISH as to Plaintiff's FCCPA claim. Doc. 97. Regarding the FCCPA claim, the Eleventh Circuit held that "DISH attempted to collect debt it had no legal right to collect because the debt had been discharged in bankruptcy." *Id.* at 13. The appellate court further determined that "DISH directly contacted Medley after having received notice that she was represented by counsel." *Id.* The Eleventh Circuit remanded the

case to this Court "to consider whether DISH actually knew that the Pause charges were invalid and that Medley was represented by counsel with regard to the debt it was attempting to collect, and if so, whether such errors were unintentional and the result of bona fide error." *Id.*

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving

party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.    DISCUSSION

Plaintiff sues DISH for violations of the FCCPA claiming DISH attempted to collect a debt which it knew was invalid in violation of Fla. Stat. § 559.72(9) and DISH contacted her although it knew she was represented by counsel regarding the invalid

debt in violation of Fla. Stat. § 559.72(18).[2] Because the Court finds there are disputed issues of material fact regarding whether DISH knew the Pause debt was invalid and whether DISH knew Plaintiff was represented by counsel regarding the discharged Pause debt, the motions for summary judgment are due to be denied as to the issue of DISH's statutory violations. As discussed below, the Court will grant summary judgment in Plaintiff's favor as to DISH's Eighteenth Affirmative Defense that the violations, if any, resulted from a bona fide error.

## A.    Section 559.72(9)

"[T]he FCCPA, Florida's consumer protection statute, was enacted as a means of regulating the activities of consumer collection agencies within the state. 'The FCCPA is a laudable legislative attempt to curb what the legislature evidently found to be a series of abuses in the area of debtor-creditor relations.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 10A Fla. Jur.2D Consumer § 138 (2010)). Generally, the FCCPA prohibits debt collection agencies and corporations from claiming, attempting, or threatening to enforce a debt where such person knows the right does not exist. Fla. Stat. § 559.72(9); *Cook v. Blazer Fin. Servs., Inc.*, 332 So. 2d 677, 679 (Fla. 1st DCA 1976). To establish a violation of section 559.72(9), "it must be shown that a legal right that did not exist was asserted and that

---

[2] In her original Complaint, Plaintiff also sued DISH in Count I for violation of Fla. Stat. § 559.72(7) for alleged abusive and harassing conduct by DISH in sending "at least six emails directly to Plaintiff in an attempt to collect a debt." Doc. 2 ¶¶ 56–63. Plaintiff sought damages under Fla. Stat. § 559.77. As noted in the Eleventh Circuit's opinion, Plaintiff did not appeal the dismissal of this claim. Doc. 97 at 6 n.1. Plaintiff also sued DISH in Count IV for violation of the TCPA. Doc. 2 ¶¶ 74–83. Dismissal of this claim was affirmed on appeal. Doc. 97 at 18.

the person had actual knowledge that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) (quoting *Pollock v. Bay Area Credit Serv., LLC*, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009)).

The first part of the analysis was addressed by the appellate court when it held DISH's prepetition breach of contract claim for the Pause debt was discharged in Medley's bankruptcy. Doc. 97 at 11. Thus, DISH had no legal right to collect the Pause debt. *Id.* But, to hold DISH liable for attempting to collect the discharged Pause debt, Plaintiff must show that DISH knew that the right to collect the Pause debt did not exist.

Under Florida law, "use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1312 (S.D. Fla. 2009) (quoting *In re Cooper*, 253 B.R. 286, 290 (Bankr. N.D. Fla. 2000)). "The statute does not provide for recovery if the creditor merely should have known the debt was not legitimate." *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) (quoting *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. 4th DCA 2009)).  The FCCPA requires that a plaintiff establish that a creditor had actual knowledge that "the debt is not legitimate" or that "the right [the creditor is seeking to enforce] does not exist." Fla. Stat. § 559.72(9). This does not require, however, that

11

the creditor know that the FCCPA forbids its conduct. *Prescott v. Seterus, Inc.*, 684 F. App'x 947, 949 (11th Cir. 2017).[3]

In support of its motion and in opposition to Plaintiff's motion, DISH argues that Plaintiff is unable to cite to record evidence showing it had actual knowledge that the Pause debt was discharged in bankruptcy. DISH contends the documents and testimony are uncontroverted that the Pause charges were valid. DISH cites to the fact that Plaintiff signed up for the Pause program, accepted the Pause disclosures, and never canceled the Pause service. Doc. 117-2 ¶¶ 7–16. DISH never read the cancelation disclosures and terms to Plaintiff. *Id.* ¶ 17. DISH submits that the mere act of filing for bankruptcy does not result in a canceled account. *Id.* ¶ 11. DISH does not dispute it had knowledge of Plaintiff's bankruptcy (Doc. 65-3 at 17–19), but submits there are situations where a DISH customer files bankruptcy and still desires to be an active DISH customer. Doc. 65-3 at 112. Because Plaintiff kept her DISH television equipment, DISH contends this showed Plaintiff's intent to reactivate her DISH services. Doc. 117-2 ¶ 10. Plaintiff did not cancel her DISH service. Doc. 117-2 ¶ 16. Thus, DISH documented in its account notes that Plaintiff will remain "responsible for all charges after the file date" of the bankruptcy. Doc. 117 at 6; Doc. 51-5 at 5. DISH believed its phone call and emails to Plaintiff were made and sent in accordance with the accepted Pause disclosures. Doc. 117-2, pp 4-6. Further, DISH argues it is

---

[3] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." *United States v. Rodriguez*, 751 F. 3d 1244, 1251 n.5 (11th Cir. 2014) (quoting 11th Cir. R. 36-2).

illogical that it would write off $831 in discharged bankruptcy debt, and yet refuse to write-off $43 if it actually knew that the debt was invalid.

In support of her motion and in opposition to DISH's motion, Plaintiff cites to the fact that DISH knew Plaintiff filed bankruptcy. Doc. 44-3 at 102; Doc. 44-6 at 46. Regarding DISH's monitoring of the bankruptcy case, there is no indication the Pause debt was ever reaffirmed or assumed. Doc. 44-3 at 118. DISH received notification of Medley's discharge in bankruptcy. Doc. 44-3 at 23–24. The account number for the Pause charges was the same account number (ending in "8000") listed in Plaintiff's bankruptcy schedules. Doc. 44-6 at 20. Moreover, Plaintiff challenges DISH's contention that it believed Medley wanted to continue her DISH service post-bankruptcy by citing to the account note which specifically documents: "talked to Linda [Medley]/wanna cancel service, said she filed bankruptcy…." Doc. 117-4 at 5. Plaintiff argues these notes establish that she disclosed her desire to cancel her service with DISH and belie DISH's argument that DISH reasonably believed that Plaintiff "desired to continue her relationship with DISH" after she filed for bankruptcy. DISH responds that the Pause service was never, in fact, canceled because it never read the disclosures due to the call being disconnected.[4]

Although the statute does not provide for recovery if the creditor merely should have known the debt was not legitimate, *Schauer*, 5 So. 3d at 6, Plaintiff has proffered enough evidence in the record from which a jury could reasonably infer that DISH

---

[4] The parties do not direct the Court to any evidence in the record explaining why the call was disconnected.

knew the Pause debt was invalid and that it did not have the right to collect it. On the other hand, considering the evidence in a light most favorable to DISH, a jury could reach the opposite conclusion, as DISH has provided record evidence from which a jury could infer DISH did not know that the Pause debt was invalid. *See Prescott,* 684 F. App'x at 949 (holding genuine dispute of material fact existed as to debt collector's knowledge where jury could infer actual knowledge based on reading of a contract but reach opposite conclusion when considering deposition testimony of corporate representative for debt collector). These factual disputes cannot be resolved on summary judgment. Accordingly, the parties' cross motions for summary judgment as to Plaintiff's claim for alleged violations of § 559.72(9), Fla. Stat., are due to be denied.

**B.   FCCPA Claim under § 559.72(18), Fla. Stat.**

Section 559.72(18) prohibits any person attempting to collect a consumer debt from "[c]ommunicat[ing] with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." Pursuant to the plain language of the statute, the debtor must demonstrate that the debt collector "knows" or has "knowledge" that the consumer is represented by an attorney "with respect to" such debt. *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1309 (S.D. Fla. 2017).

The Eleventh Circuit remanded this case for consideration of whether DISH knew "Medley was represented by counsel with regard to the debt it was attempting

to collect." Doc. 97 at 13. The faxes, typed on Plaintiff's letterhead, from Plaintiff's counsel to DISH provided:

> Please be aware that this law firm (see above for contact information) represents Linda Medley with regard to her debts generally (i.e. for the purpose of settling ALL of her debts for filing a bankruptcy), including the above listed account and any other accounts of debts which you or your agency is attempting to collect from our client(s).

Doc. 2 at 30, 39. There is no dispute the letters were sent to a fax number owned by DISH. DISH does not dispute it received the faxed letters from counsel.[5] Thus, Dish had actual knowledge that Medley was represented by counsel, and it knew counsel's name and address.[6]

The question that remains is whether DISH knew counsel was representing Medley regarding the debt it was attempting to collect, *i.e.*, the Pause debt.

Here, DISH argues that Medley fails to proffer any evidence showing that it had actual knowledge of counsel's representation as to the Pause charges specifically. In support of its position that it did not know, DISH provides the affidavit of Picchione, who states, "because the fax stated that Plaintiff retained counsel 'for the purpose of settling all of her debts for filing a bankruptcy,' and not with respect to the Pause charges, DISH did not contact Plaintiff with regard to her discharged bankruptcy debt." Doc. 117-8 ¶ 6. DISH also cites to testimony of Picchione, which indicates that

---

[5] Picchione testified that the faxes would have been received by bankruptcy analyst, Laura Winkel. Although Picchione did not directly ask Winkel if the faxes had been received, Picchione testified she discussed the letters with Winkel. Doc. 117-7 at 5–6.
[6] Additionally, Defendant knew of counsel from the bankruptcy Notice of Commencement, which DISH received. Doc. 1-8 at 26–27; Doc. 44-3 at 21.

Laura Winkel, the bankruptcy analyst who would have received the faxes from counsel, would not have taken any action "because in her mind the bankruptcy was discharged and done" as of the date of counsel's letters. Doc. 121 at 3; Doc. 117-7 at 5–7. DISH also offers the affidavit of Montano, which refers to DISH's account notes that Plaintiff would remain responsible "for all charges after the file date [of] bankruptcy." Doc. 117-2 at 5.

DISH argues that since it was not attempting to collect any debt discharged in bankruptcy and was only seeking to collect the Pause charges which were not referenced in counsel's letter, there is no evidence that it had actual knowledge that counsel represented Plaintiff regarding the Pause debt. According to DISH, the only debts the fax references are Plaintiff's "bankruptcy-related" debts." Doc. 117 at 13. DISH contends that "it relied on the language of the faxes." *Id.* It submits that Plaintiff only offers assertions as to how DISH should have understood or interpreted the fax, not evidence of what DISH actually knew. DISH also cites to Plaintiff's failure to return her DISH equipment as evidence of Plaintiff's desire to continue her relationship with DISH after she filed for bankruptcy. Doc. 121 at 3.

In opposition, Plaintiff argues that the faxed letters clearly identified that counsel was representing her regarding her DISH account ending in "8000" and *any* debt that DISH was attempting to collect from her, which she submits includes the Pause charges. The fax contains one account number. The Pause debt relates to that account. The Pause debt arises from a prepetition Agreement. The fax provides that counsel's representation "include[s] the above listed account and any other accounts

16

of debts which you or your agency is attempting to collect from [Medley]." Doc. 2 at 30, 39. Even accepting DISH's position that it perceived the Pause debt to be a separate debt, the fax arguably covers that scenario by including the language "any other accounts of debts" that DISH is attempting to collect from Plaintiff.

Plaintiff also points to the fact that DISH was collecting the Pause charges after she filed bankruptcy (but before discharge) by charging the amount due from the credit balance on her account.[7] Thus, DISH's explanation that the Pause debt is a separate debt is inconsistent with the fact that DISH was collecting Pause charges pre-discharge.

There is no dispute that the account number referenced on the faxes was Plaintiff's DISH account ending in "8000." DISH argues, however, that an account is not the same as a debt. In response, Plaintiff cites to *Miceli v. Orange Lake Country Club, Inc.*, No. 6:14-CV-1602-ORL-41, 2015 WL 5081621, at *3 (M.D. Fla. Aug. 5, 2015), in which the court found that "precise language or magic word[s]" are not required to notify a debt collector that the debtor is represented by legal counsel with respect to a debt. Although *Miceli* involved consideration of a motion to dismiss, that court's discussion of the statute's remedial purpose is equally applicable in considering summary judgment here. *See id.* at *3 ("Rigidly requiring the use of precise language

---

[7] Plaintiff argues such conduct violates the automatic stay that was in place during the pendency of her bankruptcy. That issue is not before this Court. The Court addresses the issue only to note that DISH's attempt to argue that "in its mind" it saw the Pause charges as separate post-discharge debts is less persuasive given that DISH was charging Plaintiff Pause charges prior to the bankruptcy discharge.

to provide notification that a debtor was represented would contradict the FCCPA's remedial nature and its broad purpose of protecting the public.").

There is no dispute that the DISH Pause charges purportedly owed by Plaintiff are not associated with an account number other than the account ending in "8000." There is no dispute that the terms of the Pause plan are contained in the same prepetition Agreement that governs Plaintiff's account with DISH. There is no dispute that counsel provided his name and address.

On October 24, 2014; November 3, 2014; December 3, 2014; January 14, 2015; and February 14, 2015, DISH sent Medley billing notifications. Doc. 124 ¶ 11.  The internal DISH account notes reflect that "delinquency notifications" were sent by email to Plaintiff on December 4, 13, 16, 20, 2014, and January 9, 2015. Doc. 51-5 at 4. Montano admits that DISH called Plaintiff on November 26, 2014, regarding collecting her Pause charges.  Doc. 117-2 ¶ 20. It is undisputed this call was made to Plaintiff by DISH after DISH's receipt of at least one of the faxed letters of representation. And the delinquency notifications were sent to Plaintiff by DISH after it received one or more faxed letters of representation.

On the record before the Court, disputed issues of material fact exist as to whether DISH actually knew that Medley was represented by counsel with regard to the Pause debt. In a light favorable to DISH, DISH believed counsel's letters concerned only debts discharged in bankruptcy and that the Pause debt incurred after the bankruptcy discharge was a separate debt that was not the subject of bankruptcy counsel's letter. DISH relies on the fact that the letters do not specifically reference the

18

Pause charges, but rather state Plaintiff retained counsel "for the purpose of settling all of her debts for filing a bankruptcy." DISH contends that Plaintiff signed up for the Pause program, never canceled the Pause program, and agreed to the disclosures regarding the Pause program. It believed its phone call and emails to Plaintiff were made in accordance with the accepted Pause disclosures. Moreover, because Plaintiff never returned her DISH equipment, DISH believed Plaintiff desired to continue her relationship with DISH post-bankruptcy.

On the other hand, in a light favorable to the Plaintiff, there is evidence in the record through counsel's faxed letters that DISH knew Plaintiff was represented by counsel "with regard to her debts generally" and "including the account ending in '8000' and regarding "any other accounts of debts which [DISH was] attempting to collect from [Medley]." A reasonable jury could read this letter and conclude that any reasonable debt collector would have known that counsel represented Medley regarding the debt DISH was trying to collect, and "infer that [the debt collector] had actual knowledge" that Plaintiff was represented by counsel regarding the Pause charges. *See Prescott*, 684 F. App'x at 949 (holding that reasonable jury could infer debt collector had actual knowledge, in context of alleged § 559.72(9) violation, based on reasonable reading of contract).

Similarly, in a light favorable to the Plaintiff, the Pause charges were not a new debt, they derived from the original prepetition Agreement[8], and they did not result in

---

[8] The Eleventh Circuit concluded that the Pause debt cannot be treated separately from the services debt. *See* Doc 97 at 6.

a new account number. Additionally, Plaintiff points to the fact that the letters came months after the bankruptcy discharge. Plaintiff argues that it is illogical for counsel to be sending letters of representation regarding debt that had already been discharged, and thus the only logical conclusion is the letters from counsel sought to stop communication related to the debt that DISH was trying to collect at that time, which was the Pause debt.

Finally, Plaintiff points to the language of the statute itself which prohibits communications with a debtor represented by counsel "unless the debtor's attorney fails to respond within 30 days to a communication from the person…." Fla. Stat. § 559.72(18). Plaintiff urges that the statute contemplates a debt collector will contact debtor's counsel, and yet there is no evidence in the record that DISH made any effort to contact counsel to clarify the scope of counsel's representation. In fact, Picchione testified that the letters of attorney representation were not documented anywhere in the DISH account notes for Plaintiff's account. Doc. 65-3 at 35. DISH responds this is because it believed the letters related only to bankruptcy debt which had already been written off.

These are the types of conflicts in the evidence and weighing of witness credibility that cannot be resolved on summary judgment and are best left for the jury to decide. "It is the role of the trier of fact to hear the testimony of the various witnesses concerning these matters, assess the credibility of the witnesses, and determine whether the facts give rise to a violation of the FCCPA." *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 513 (Fla. 1st DCA 2007) (questions of fact existed regarding

whether counsel provided notice of representation and plaintiff was contacted by debt collector in violation of § 559.72(18)). Because disputed issues of fact exist regarding whether DISH knew that Plaintiff was represented by counsel with regard to the Pause debt, the parties' motions for summary judgment are due to be denied as to Plaintiff's claim under § 559.72(18).

### C.      Bona Fide Error Defense under § 559.77(3)

In its Answer and Affirmative Defenses, DISH raises bona fide error as an affirmative defense. Doc. 5 at 12. Under the FCCPA, "[a] person may not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error." Fla. Stat. § 559.77(3). Courts construing and applying this provision of Florida law give great weight "to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act ["FDCPA"]."[9] *Id.* § 559.77(5); *Gann v. BAC Home Loans Servicing LP*, 145 So.3d 906, 908 (Fla. 2d DCA 2014). In an FDCPA case, the Eleventh Circuit held, "[a] debt collector asserting the bona fide error defense must show by a preponderance of the

---

[9] Section 1692k(c) of the Fair Debt Collection Practices Act includes a bona fide error defense nearly identical to the FCCPA: "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1307 (11th Cir. 2019) (quoting 15 U.S.C. § 1692k(c)).

evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009) (discussing 15 U.S.C. § 1692k(c)).

"As used in the [FDCPA] 'bona fide' means that the error resulting in a violation was made in good faith; a genuine mistake, as opposed to a contrived mistake." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1308 (11th Cir. 2019) (quoting *Edwards v. Niagara Credit Sols., Inc.*, 548 F.3d 1350, 1352–53 (11th Cir. 2009)). "To be considered a bona fide error, the debt collector's mistake must be objectively reasonable." *Id.*

Although DISH raises the bona fide error defense in its answer, it has not moved for summary judgment on this defense. Doc. 117 at 9 n.2 (stating "DISH does not seek summary judgment on a bona fide error defense here" because it believes the issue is moot). In response to Plaintiff's motion for summary judgment on DISH's affirmative defense of bona fide error, DISH argues that the bona fide error defense is never triggered because Plaintiff fails to establish a *prima facie* case demonstrating that DISH had actual knowledge per § 559.72(9) and § 559.72(18). Given the Court's conclusion above that disputed issues of material fact exist on the question of DISH's knowledge, the bona fide error defense is still potentially at issue, notwithstanding DISH's arguments to the contrary.

The Supreme Court explains that a debt collector may not avail itself of the bona fide error defense for mistaken interpretations of the law. *Jerman v. Carlisle*, 559 U.S.

22

573, 604-05 (2010). In so holding, the Court states, "[i]t is far from obvious why immunizing debt collectors who adopt aggressive but mistaken interpretations of the law would be consistent with the statute's broadly worded prohibitions on debt collector misconduct." *Id.* at 602. Here, DISH made a legal mistake. The Eleventh Circuit has specifically concluded that "DISH had a prepetition breach of contract claim against Medley for the Pause debt" that was discharged by the Bankruptcy Judge's discharge order and that "DISH attempted to collect debt it had *no legal right* to collect because the debt had been discharged in bankruptcy." Doc. 97 at 11, 13 (emphasis added). Indeed, while DISH asserts it did not know at the time that it had made a legal error, it acknowledges the fact that the account note documenting that Plaintiff is responsible for all charges after the bankruptcy discharge was a legal error. Doc. 117 at 6. Similarly, it acknowledges that, while it did not know so at the time, its reading of counsel's faxed letters of representation was legally wrong. Doc. 117 at 2. As such, DISH may not rely upon the bona fide error defense because the error was a legal error, not a mistake.

Despite acknowledging in its motion for summary judgment that its errors were legal errors (Doc. 117 at 2, 6), DISH responds to Plaintiff's motion for summary judgment by alternatively arguing that the bona fide error defense applies because, at worst, it made a good faith and reasonable mistake of fact. Doc. 121 at 10. Even if the Court were to accept DISH's contention that its error was a factual, not a legal one, DISH still fails to show a genuine dispute of material fact exists on the issue. To avail itself of the bona fide error defense, a debt collector must not only establish that the

violation of the statute was unintentional and a bona fide error, it must show it occurred despite the maintenance of procedures reasonably adapted to avoid any such error. Fla. Stat. § 559.77(3).

In response to Plaintiff's motion directed to DISH's affirmative defense, the only evidence DISH offers in support of its position that this was a mistake, entitling it to the bona fide error defense, is to cite to record evidence that "Plaintiff never cancelled her service or returned her equipment." Doc. 121 at 10. This evidence speaks nothing to DISH's maintenance of procedures reasonably adapted to avoid the errors at issue. As argued by Plaintiff, which DISH does not refute in its response, there is no evidence DISH had any procedure in place to avoid continuing to debit Plaintiff's credit balance during the pendency of her bankruptcy, which it continued to do. *See* Doc. 31-6 at 30–43. In fact, the policy at the time, appears to support the practice. Doc. 44-3 at 100 (policy was to not write-off until the discharge). DISH's policy was to not document bankruptcy attorney contact information when it received notice that a client filed for bankruptcy. Doc. 44-3 at 102–03. DISH's procedures provided that an analyst would take no action and not document a bankruptcy attorney's communications regarding one of DISH's clients if the account shows the bankruptcy is discharged. Doc. 44-3 at 35–37. DISH does not include in a customer's account notes whether a debt was reaffirmed or a contract assumed in the context of a customer's bankruptcy case. Doc. 44-3 at 105. DISH does not refute that it does not look for its customer's reaffirmation of a debt within their bankruptcy case. DISH fails

24

to address these practices and procedures, or lack thereof, and otherwise fails to direct the Court to any procedures it had adopted to avoid the errors at issue.

Plaintiff is entitled to summary judgment in her favor regarding the bona fide error defense raised in Defendant's Eighteenth Affirmative Defense (Doc. 5 at 12). Accordingly, if a jury determines that DISH violated § 559.72(9) or § 559.72(18) because DISH knew that the Pause charges were invalid or that Medley was represented by counsel with regard to the Pause charges, DISH may not avail itself of the bona fide error affirmative defense of Fla. Stat. § 559.77(3). Accordingly, it is

**ORDERED**:

1.   Defendant Dish Network LLC's Motion for Summary Judgment (Doc. 117) is **DENIED**.

2.   Plaintiff's Motion for Partial Summary Judgment (Doc. 119) is **GRANTED** to the extent that Plaintiff is entitled to summary judgment as to DISH's bona fide error defense. In all other respects, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

3.   By separate notice, the Court will schedule a status conference to discuss scheduling this matter for trial.

**DONE AND ORDERED** in Tampa, Florida on March 25, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any

25