## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LINDA MEDLEY,

      Plaintiff,

v.

DISH NETWORK L.L.C.,

      Defendant.

_____/

Case No.: 8:16-cv-02534-CEH-CPT

## DEFENDANT DISH NETWORK L.L.C.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW WITH RESPECT TO COUNT II, PUNITIVE DAMAGES, AND EMOTIONAL DISTRESS DAMAGES

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant DISH Network L.L.C. ("DISH") renews its Rule 50 motions for judgment as a matter of law with respect to: (1) Count II under Section 559.72(18) of the Florida Consumer Collection Practices Act ("FCCPA"); (2) punitive damages under Florida Statute § 768.72; and (3) emotional distress damages.

The findings as to liability and damages cannot be reconciled with the factual record. As importantly, the Jury's finding that DISH did not have actual knowledge that the Pause charges were invalid returns the parties to the exact same factual position as when the Court previously granted summary judgment in favor of DISH, and the Court should enter judgment in DISH's favor again now. DISH is entitled to judgment as a matter of law for the reasons set forth below.

I.    **FACTS & PROCEDURAL POSTURE**

**A. Relevant Facts Regarding the Notices of Representation.**

The Court is very familiar with the facts at this point. But given the substantial narrowing of remaining facts and issues from trial, to summarize in relevant part, Plaintiff filed for bankruptcy in May of 2014. During Plaintiff's bankruptcy and before her discharge, DISH wrote off her debt. (*See* Joint Exhibit 7, note dated Aug. 23, 2014.) As the Court is aware, however, DISH viewed Plaintiff's post-bankruptcy charges as a new debt, separate and independent of the amount of debt encompassed within Plaintiff's bankruptcy.

On October 1, 2014, DISH sent Plaintiff a billing statement by email regarding the post-bankruptcy debt. (Joint Exhibit 5(B).) On October 15, 2014, Plaintiff's counsel sent DISH a fax Notice of Attorney representation. (*See* Pltf. Exhibit 13(A).) The header of the fax contained the caption of Plaintiff's bankruptcy, including the matter name, bankruptcy case number, and date of filing. The body of the fax stated, in relevant part:

> Please be aware that this law firm (see above for contact information) represents Linda Medley with regard to her debts generally (i.e. for the purpose of settling ALL of her debts for filing a bankruptcy), including the above listed account and any other accounts of debts which you or your agency is attempting to collect from our client(s). Any further communication with our client(s) will be in violation of Fla. Sta. § 559.72(18), which provides in part that:
>
> > "[I]n collecting consumer debts, no person shall communicate with the debtor if that person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of...such attorney's name and address."

(*Id.*)

After this initial fax and up through December 29, 2014, DISH sent three emails to Plaintiff regarding her bill. (*See* Joint Exhibits 6(B)-(D).) DISH also made, at most, two phone calls to Plaintiff regarding her debt. (Tr., Jury Trial – Day Three Morning Session, pg. 44:5-15.)[1]

On December 30, 2014, Plaintiff's counsel sent an identical fax to DISH. (*See* Pltf. Exhibit 13(B).) DISH sent two additional emails to Plaintiff, on January 14 and February 13, 2015. (Joint Exhibits 6(E) and 6(F).) However, only the January 14 statement requested payment. (Joint Exhibit 6(E).) The February 13, 2015, statement reflected that DISH wrote off the account and advised "No Payment Due." (Joint Exhibit 6(F).)

On February 16, 2015, Plaintiff's counsel sent a third fax. (Pltf. Exhibit 13(C).) However, DISH had already written off Plaintiff's debt by that time and there were no communications sent to Plaintiff after that date. (Tr., Jury Trial – Day Three, Afternoon Session, Jan. 25, 2023, pg. 36:1-4.)

In total, after the first fax of October 15, 2015, *at most*, DISH sent Plaintiff five emails and made two phone calls that sought payment of the debt.[2] Plaintiff

---

[1] While DISH made a total of six calls after October 15, 2014, DISH's witness testified that only one related to Plaintiff's bill. (*Id.*) DISH's representative testified that the remainder were calls about account information, though acknowledged that one additional call (October 24, 2014) might have included information regarding making a payment, but he did not recall. (*Id.* at 79:19-80:21.) This is consistent with Plaintiff's handwritten log regarding the substance of the calls. (*See* Joint Exhibit 11, notes dated October 24 and November 26, 2014.) As such, for purposes of this Motion, DISH will more broadly assume two calls were an attempt to collect the debt.

[2] During trial, Plaintiff argued that, even before her counsel sent the faxes, DISH contacted Ms. Medley during and after her bankruptcy despite knowing she was represented by counsel. However, the Jury found that DISH did not knowingly attempt to collect an unlawful debt after Plaintiff filed her bankruptcy petition. By extension, the Jury's finding regarding DISH's lack of knowledge as the validity of the Pause charges logically necessitates that DISH did

agreed that the emails and phone calls were "short," taking about a minute to review. (Tr., Jury Trial – Day Two Morning Session, pp. 85:23-86:25, 90:4-6.)

### B. DISH's Policy for Honoring Notices of Representation and Application to this Case.

Despite Plaintiff's suggestion, the faxes of representation were not "thrown in the trash." (*See id.*, pg. 89:2-4.) DISH has a policy in place for processing and honoring notices of attorney representation. (*Id.*, pp. 110:22-112:16.)

But, as the Court is aware, the subject header of the faxes specifically identified Plaintiff's bankruptcy case and the letter stated that Plaintiff was represented by counsel for purposes of settling her debt for filing bankruptcy. As such, because DISH had already written off Plaintiff's debt, thought the post-bankruptcy Pause charges were separate, and did not view the faxes as including the post-bankruptcy Pause debt, DISH took no other action, believing it had already honored the faxes. (*Id.*; *see also id.* at pp. 89:2-90:17.)

Plaintiff argued that DISH should have read the faxes differently because, despite the overall context, they included a line about representing Plaintiff with respect to other debts. However, as discussed further below, this Court previously agreed with DISH's interpretation of the faxes as a matter of law. *Medley v. Dish*

---

not know Plaintiff was represented by counsel with respect to the Pause charges until, at the earliest, after the first fax of October 15, 2014.

*Network, LLC*, No. 8:16-cv-2534-T-36TBM, 2018 U.S. Dist. LEXIS 144895, *25 (M.D. Fla. Aug. 27, 2018).

While DISH recognizes the Jury's verdict is independent of this Court's prior summary judgment order, as detailed later, DISH respectfully submits that this Court's prior agreement with DISH's interpretation of the faxes bears on both DISH's liability, as well as the appropriateness of punitive damages overall.

### C. Plaintiff's Testimony Regarding Emotional Distress and the Jury's Award.

The Jury found in favor of DISH on Plaintiff's claim alleging that DISH knowingly attempted to collect an unlawful debt. (Dkt. 283, PageID 6638.) The Jury, however, found that DISH contacted Plaintiff after having actual knowledge that she was represented by counsel with respect to the debt. (*Id.*)

Plaintiff's testimony regarding her alleged distress from these few emails and phone calls was that: (1) "my heart would start racing and I would feel shaky and scared, nervous" (*Id.* pg. 33:4-5; *see also id*. pg. 40:18-20 (same)); and (2) saying a few times that she was "worried." (*Id.* pp. 35:6-7, 37:22, 40:20, 42:10-11.)

Based on the few emails and phone calls, the Jury awarded Plaintiff $8,750 in compensatory damages. (*Id.* PageID 6639.) The Jury then awarded Plaintiff $225,000 in punitive damages, an amount nearly 26 times greater than the compensatory damage award. (*Id.* PageID 6640.)

DISH now seeks renewed judgment as a matter of law on the grounds that the evidence at trial was insufficient to support findings of: (1) liability on Plaintiff's FCCPA Section 559.72(18) claim; (2) gross negligence for punitive damages; and (3) legally adequate and compensable emotional distress.

## II.   LAW AND ARGUMENT

### A. Standard for Rule 50(b) motion.

The law instructs courts to enter "judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc*., 369 F.3d 1189, 1192 (11th Cir.2004). Critically, the "issue is not whether the evidence was sufficient for [a party] to have won, but whether the evidence was sufficient for it to have lost." *Rodriguez v. Farm Stores Grocery, Inc*., 518 F.3d 1259, 1265 (11th Cir.2008).

As set forth below, only jury error can explain the discrepancies between the record and the findings of fact, on the one hand, and the legal conclusions of the verdict on the other.

### B. DISH is entitled to judgment as a matter of law on liability for Plaintiff's FCCPA Section 559.72(18) claim.

DISH is entitled to judgment as a matter of law on Plaintiff's Section 559.72(18) claim for three reasons. First, as the Jury returned a verdict in favor of DISH on Plaintiff's Section 559.72(9) claim—i.e., that DISH did not have actual knowledge that the Pause charges were invalid—the parties are returned to the same

factual position as when the Court previously entered summary judgment in DISH's favor on Plaintiff's Section 559.72(18) claim, and the Court should reach the same legal conclusion as it previously did. Second, there was still no evidence that DISH had actual knowledge that Plaintiff was represented by counsel with respect to the Pause charges. At most, the evidence merely showed that DISH "should have known" Plaintiff was represented by counsel by interpreting the faxes differently. That is insufficient as a matter of law. Finally, when the Court entered judgment as a matter of law in DISH's favor on the issue of intentional misconduct regarding punitive damages, that ruling necessarily subsumed a finding that DISH had actual knowledge. Instead, the Jury's finding of liability could only be founded on the idea of gross negligence or "should have known," neither of which are sufficient.

First, as this Court previously held with respect to the faxes:

> The faxes specifically pertain to Medley's bankruptcy-related debts. By adding the "i.e.", or, in other words, "that is" parenthetical, Medley's counsel defined the scope of the debts that fell under his representation. ***Although the scope appears expansive based on the clause that follows the parenthetical, the clause simply clarifies that the bankruptcy-related debts include the listed account as well as any other debt that fell within the purview of her bankruptcy.*** The faxes are evidence that Medley was represented by counsel in connection with her bankruptcy proceeding, and thus, pre-petition debt. Accordingly, Dish did not have actual knowledge that Medley was represented by counsel with respect to the specific debt, post-petition debt, that it attempted to collect and it is entitled to summary judgment on Count III.

*Medley v. Dish Network, LLC*, No. 8:16-cv-2534-T-36TBM, 2018 U.S. Dist. LEXIS 144895, *25 (M.D. Fla. Aug. 27, 2018).

While the Eleventh Circuit reversed this Court's order, in part, on summary judgment, the Eleventh Circuit did *not* express disagreement with, or reject, this Court's interpretation of the scope of the faxes. Rather, the Eleventh Circuit solely reversed on the basis that the *Pause charges were not a separate debt from Plaintiff's bankruptcy* and remanded for determination of whether DISH had actual knowledge in that respect. *Medley v. Dish Network, LLC*, 958 F.3d 1063, 1068-69 (11th Cir. 2020). Whether DISH had actual knowledge as to whether the Pause charges were invalid necessarily overlapped with Plaintiff's Section 559.72(18) claim, because if DISH did have actual knowledge that the Pause charges were invalid (i.e., related to the bankruptcy), that would necessitate a finding that DISH knew Plaintiff had counsel with respect to her bankruptcy debt, for which there is no dispute was the subject of the faxes.

But the Jury returned a verdict in DISH's favor on Plaintiff's Section 559.72(9) claim, and found that DISH did not have actual knowledge that the Pause charges were invalid. (Doc. 283, PageID 6638.) Thus, the parties are returned to the same factual position as when this Court originally entered summary judgment in

DISH's favor,[3] and it should enter judgment as a matter of law here for the same reasons again.

Indeed, it was notable during trial that even Plaintiff's counsel misapprehended the actual meaning of the term "i.e.," and later ultimately stipulated to its meaning and his error. (Tr. Jury Trial – Day 3, Afternoon Session, pp. 73:18-74:6, 76:16-24.) As the Court recognized, i.e. ("that is") has a specific and different meaning than e.g. ("for example"), and the two terms "are not interchangeable." (*Id.*, pg. 76:19-21.)

The fact that the Jury found differently—perhaps laboring under the same misunderstanding of the phrase as Plaintiff's counsel—is immaterial. DISH's reading of the faxes **was** legally (and grammatically) correct. Even if a sentence could be construed more broadly, an "i.e." clause **is an expression of limitation**, and "expressly limits" the scope and application of the sentence. *See, e.g.*, *United States v. King*, 849 F.2d 1259, 1260 (9th Cir. 1988) (discussing meaning and impact of term "i.e." and noting "[i]t does not introduce an example, and when substituted for e.g. in that function is a blunder") (citation and alteration omitted).

As the Jury found that DISH did *not* have actual knowledge the Pause charges were invalid under FCCPA Section 559.72(9)—i.e., did not have actual knowledge

---

[3] The only distinction between now and the Court's prior summary judgment order is that the Eleventh Circuit found that the Pause charges were related to the bankruptcy. However, that is a distinction without a difference as it relates to the issue of actual knowledge, for which the parties are now in the same position as when the Court previously entered summary judgment in favor of DISH.

that the Pause charges were related to Plaintiff's bankruptcy—the Court should enter judgment as a matter of law on the Section 559.72(18) claim on the same basis that it did previously. As respectfully as can be stated, Plaintiff's counsel's and the Jury's "blunder," *see id.*, in reading the faxes (or writing the faxes, in Plaintiff's counsel's case) cannot reasonably be construed to impart liability on DISH.

Second, and as importantly, the evidence at trial was insufficient to support a finding of actual knowledge. DISH has a policy in place for processing and honoring notices of attorney representation. (Tr., Jury Trial - Day 2, Afternoon Session, pp. 110:22-112:16.) But, the subject header of the faxes specifically identified Plaintiff's bankruptcy case and the letter stated that Plaintiff was represented by counsel for purposes of settling her debt filing bankruptcy. As such, because DISH had already written off Plaintiff's debt, thought the post-bankruptcy Pause charges were separate, and did not view the faxes as including the post-bankruptcy Pause debt, DISH took no other action, believing it had already honored the faxes. (*Id.*; *see also id.* at pp. 89:2-90:17.)

There is no other evidence in this case. Plaintiff's entire actual knowledge argument is predicated on arguing that DISH knew Plaintiff was represented by counsel based on the broader language of the faxes, despite the "i.e." parenthetical. But Plaintiff introduced no evidence of that actual knowledge. Instead, Plaintiff

asked the Jury to reach its conclusion regarding actual knowledge based on how she feels DISH should have interpreted the faxes.

It is beyond dispute that the FCCPA requires proof of actual knowledge and that what a defendant "should have known" is not sufficient. *See, e.g.*, *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1330 (M.D. Fla. 2015). Where a defendant has a good faith basis for its belief, it cannot be found to have actual knowledge of impropriety. *See McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) (finding that although the defendant attempted to collect a time-barred debt in violation of the FCCPA, it did not have actual knowledge the debt was time-barred). Indeed, in *McCorriston*, the court found that even though the defendant's explanation was "unconvincing, if not plain wrong," the existence of a good faith belief negated any potential actual knowledge. *Id.* at 1277.

Here, even if DISH was wrong, it cannot reasonably be said that its interpretation of the faxes was not in good faith, particularly given this Court's prior agreement with DISH in its interpretation. *See also Cornette v. I.C. Sys.*, 280 F. Supp. 3d 1362, 1371-73 (S.D. Fla 2017) (finding that the plaintiff's argument that the defendants had actual knowledge based on the terms of the contract "essentially amount[s] to the argument that Defendants should have known the fee was improper," and that there was no actual knowledge when the "Defendants believed, albeit incorrectly, that they were in compliance with" the contract); *see, e.g.*, *Kelly*

*v. Davis*, No. 3:10cv392-MW/EMT, 2014 U.S. Dist. LEXIS 189524, *25-26 (N.D. Fla. July 17, 2014) (holding that emails suggesting conduct "may have been improper" was insufficient to establish actual knowledge as to impropriety under FCCPA).

"There is a big difference -- a clear difference, a plain difference -- between misunderstanding and ignoring [] language." *See, e.g.*, *Int'l Union of Operating Eng'rs, Local 139 v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 743 (7th Cir. 2004). But the testimony is clear that DISH did not simply ignore the faxes—or "throw them in the trash" as Plaintiff suggested—but rather construed and understood them differently. (Tr., Jury Trial - Day 2, Afternoon Session, pp. 89:2-90:17, 110:22-112:16.)

While Plaintiff was careful to avoid using the phrase "should have known" at trial, that is the only basis on which the Jury could have found DISH liable—that DISH had actual knowledge because it "should have" read or understood the faxes differently than it did.

Finally, the Court entered judgment as a matter of law in DISH's favor on Plaintiff's claim of intentional misconduct, and only permitted the issue of gross negligence to the submitted to the Jury. (*See* Tr., Jury Trial – Day 4, Morning Session, pp. 17:3-19:2.) However, the definition of intentional misconduct is relevant here. Specifically, intentional misconduct "means that the defendant had

***actual knowledge*** of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." Fla. Stat. § 768.72(2) (emphasis added).

When the Court entered judgment as a matter of law in DISH's favor on Plaintiff's claim of intentional misconduct, this necessarily subsumed any finding that DISH had actual knowledge. The only way the Jury could have reached their verdict was by imposing liability for gross negligence or what it believes DISH "should have known" after reading the faxes, which is insufficient.

**B.      DISH is entitled to judgment as a matter of law on gross negligence and punitive damages.**

Florida law permits the imposition of punitive damages "only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). DISH is entitled to judgment as a matter of law for three reasons. First, there was insufficient evidence of gross negligence by DISH itself. Second, there was insufficient evidence of gross negligence by Laura Winkler, the person who received the faxes. Third, even if there was some evidence to support gross negligence, the evidence was not clear and convincing.

Gross negligence is defined as "conduct [] so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of

persons exposed to such conduct." Fla. Stat. § 768.72(2)(b). This is a high bar. As the Florida Supreme Court has explained, the "required level of negligence for punitive damages *is equivalent to the conduct involved in criminal manslaughter*." *Valladares v. Bank of Am. Corp*., 197 So. 3d 1, 11 (Fla. 2016) (emphasis added).

> The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."

*Id.* Thus, gross negligence requires: "1) circumstances constituting an imminent or clear and present danger amounting to a more than normal or usual peril, 2) knowledge or awareness of the imminent danger on the part of the tortfeasor, and 3) an act or omission that evinces a conscious disregard of the consequences." *Vallejos*, 116 So. 3d at 552. There was no such evidence at trial.

As set forth earlier, DISH has (and had) a policy for honoring notices of attorney representation, but did not believe it was triggered based on the language and context of the faxes. Even if DISH's conduct and alleged error here "might possibly result in injury[,] it cannot be said that the conduct would probably and most likely result in injury." *Id.* at 552. Indeed, the fact that Plaintiff introduced no evidence of *even one similar incident* to hers is strong evidence that DISH's conduct presented no imminent or clear and present danger. *Id.* ("[I]t was a procedure that

had been successfully performed on many occasions over many years. … [T]he numerous successful performances of the challenged procedure show that a risk of accident . . . was far from imminent.").

Nor was there any evidence or knowledge or awareness of an imminent danger. Like the above, the fact that there has never been any similar instance to Plaintiff's removes the possibility that DISH was on notice of a potential gap in its process. *See id.* at 553. And for the same reason, there was no evidence suggesting a conscious disregard for consequences. *See Moradiellos v. Gerelco Traffic Controls, Inc.*, 176 So. 3d 329, 336 (Fla. 3d DCA 2015) ("There had been no accidents, no near accidents, no work stoppages, no highway closings, and no other specific problems caused by the non-functioning light. This is not a case where the employer ignored prior dangerous mishaps. … [the] conditions created a possibility of harm, which is required to prove simple negligence. But they did not create a condition in which an accident would probably and most likely occur, which is required to prove gross negligence."). Ultimately, DISH has a policy for honoring notices of attorney representation. In the absence of any prior finding that DISH's policy was deficient, or that its interpretation of the specific faxes was unreasonable, the conditions for gross negligence cannot be satisfied. *See, e.g.*, *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1352-55 (S.D. Fla. 2013).

Also, when a plaintiff seeks to impose punitive damages upon a defendant-corporation, like DISH, for the acts of an employee, the plaintiff must prove that: (1) the individual employee acted with intentional misconduct or gross negligence; and (2) DISH (a) "actively and knowingly participated in such conduct"; (b) "knowingly condoned, ratified, or consented to such conduct"; or (c) "engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant." Fla. Stat. § 768.72(3).[4]

DISH employee Laura Winkle was responsible for handling faxes regarding bankruptcy, including notices of attorney representation. (*See* Tr., Jury Trial – Day 2, Afternoon Session, pg. 47:16-20.) Plaintiff offered no evidence to show that Ms. Winkle was grossly negligent—that Ms. Winkle engaged in conduct "so extreme in degree" that it was "equivalent to the conduct involved in criminal manslaughter." *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, No. 4D22-1398, 2023 Fla. App. LEXIS 448, *5-6 (Fla. 4th DCA Jan. 25, 2023). Nor was there any evidence that DISH actively participated in or ratified the conduct at the time. *Id.* at *7 ("[T]he trial court relied exclusively on conduct that post-dated the [event] …. However, actions taken after the happening of a tortious act are not admissible on

---

[4] Direct liability for punitive damages cannot be imposed on DISH unless Plaintiff proves willful and malicious intent on the part of a managing agent by DISH. *See, e.g.*, *Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1205 (Fla. 2d DCA 2019). Plaintiff never pursued such a theory but instead sought to impose vicarious liability on DISH for its agent's conduct. Fla. Stat. § 768.72(3).

the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim.").

Indeed, despite the plain language requiring proof that the employee was grossly negligent, Plaintiff's plea for punitive damages had nothing to do with the faxes and, more importantly, asked the Jury to punish DISH because *it* was supposedly grossly negligent, not Ms. Winkle or any of its employees. (*See, e.g.*, Tr., Jury Trial – Day 4, Morning Session, pg. 73:14-25) ("Ms. Picchione, Mr. Montano are not listed anywhere on any document that you are going to be reviewing. … As much as opposing counsel wants to sit here and try to explain to you and talk to you about how they are on trial, they are not. … He again says, don't punish Ms. Picchione, don't punish Mr. Montano. Well, I don't want to punish either of them either. I want you to punish DISH."); *see also id.* at pg. 86:4-10 ("[Y]ou must determine *whether DISH acted with gross negligence* with respect to Ms. Medley's account. … enacting that policy was gross negligence *on the part of DISH Network*.") (emphasis added.)

Finally, even if there were some evidence to support a finding of gross negligence, there was not sufficient evidence to support such a finding by clear and convincing evidence. Ultimately, even if DISH's reading of the faxes was erroneous, there cannot be gross negligence as DISH had a reasonable, even if mistaken, belief as to the scope of the faxes. DISH respectfully submits that, given that this Court

17

previously expressed agreement with DISH's interpretation of the faxes, DISH's conduct—even if erroneous—cannot be grossly negligent as a matter of law. *See Dorvil v. Nationstar Mortg. LLC*, No. 17-23193-CIV-MARTINEZ-OTAZO-REYES, 2019 U.S. Dist. LEXIS 52175, *63 (S.D. Fla. March 26, 2019) ("[T]his Court finds that these legal interpretations were not completely unreasonable, and therefore not grossly negligent"), *aff'd* 852 Fed. Appx. 468, 473-74 (11th Cir. 2021).

### C. DISH is entitled to judgment as a matter of law on Plaintiff's claim of emotional distress.

#### i. Plaintiff's testimony and DISH's prior Rule 50 Motion.

Here is all of Plaintiff's relevant damages testimony, in full:

- "Each contact [] my heart would start racing and I would feel shaky and scared, nervous." (Tr., Jury Trial – Day 2, Morning Session, 33:4-5.)

- "Yes, upsetting. Each time I would see an email or get a phone call I would feel shaky and my heart started racing." (*Id.*, 40:18-20.)

- "I was worried each time[.]" (*Id.*, 35:6-7.)

- "I was extremely worried." (*Id.*, 37:22.)

- "[I] let them know that I was really worried[.]" (*Id.*, 42:10-11.)

- "Definitely worried." (*Id.*, 61:19.)

That is <u>all</u> of Plaintiff's testimony in support of her claimed emotional distress.[5]

In weighing DISH's Rule 50 oral motion at trial, the Court expressed:

---

[5] Plaintiff did offer additional testimony in the context of the post-litigation alleged emotional distress. (*See, e.g., id.*, pg. 95:9-23.) The Court already issued judgment as a matter of law in favor of DISH with respect to the post-litigation alleged emotional distress damages. (Tr., Jury Trial Day 3, Afternoon Session, pg. 6:13-22.)

> [H]aving now heard Ms. Medley's testimony today, I tell you, I am troubled by the emotional distress claim. She really didn't say a lot about her emotional distress associated with what was occurring, and so I'm going to allow the Plaintiffs an opportunity to do some research this evening and submit a short memorandum in response to the Defendant's written motion … I typically hear more when I'm talking about, when I'm listening for emotional distress and the damages here and I just -- I don't recall hearing it.

(Tr., Jury Trial – Day 2, Afternoon Session, pg. 142:5-20.)[6]

While the Court ultimately denied DISH's Rule 50 Motion, the Court did not indicate that it necessarily viewed Plaintiff's testimony as sufficient to support a claim of emotional distress. Instead, the Court decided to let the Jury proceed and concluded that "we can look at those issues later." (Tr., Jury Trial Day 3, Afternoon Session, pg. 7:18-19.) As detailed below, Plaintiff's testimony is insufficient to establish a claim of genuine issue distress as a matter of law, particularly when viewed against the scant number of communications in this case.

> ii. **As this case does not involve "egregious conduct," Plaintiff's uncorroborated testimony is insufficient to establish genuine emotional distress.**

The Eleventh Circuit's decision in *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263 (11th Cir. 2014) is on point. In *Lodge*, the plaintiffs alleged that the defendant violated the FDCPA and the automatic stay provision of the bankruptcy code by attempting to collect a debt. *Id.* at 1264-65. To support their claims for emotional

---

[6] Plaintiff did not take the Court up on its offer to provide additional briefing beyond what she previously submitted. (Tr., Jury Trial – Day 3, Morning Session, pg. 14:14-24.)

distress, the plaintiffs claimed, *inter alia*, that they were "stressed out," and experienced worry, sleeplessness, and migraines. *Id.* at 1266.

Conducting a multi-Circuit survey of the state of the law, the Eleventh Circuit acknowledged that "[t]he law has always been wary of claims of emotional distress, because they are so easy to manufacture" and have "considerable potential for abuse." *Id.* at 1270 (citation omitted). The Eleventh Circuit held that to recover damages for emotional distress, a plaintiff must "(1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection" between the alleged distress and the at-issue conduct, following the Ninth Circuit. *See id.* at 1271, citing *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139 (9th Cir. 2004).

A plaintiff must demonstrate significant emotional distress "by offering corroborating medical evidence *or* non-expert testimony (for example, by family members, friends, or co-workers) about the manifestations of his mental anguish." *Lodge*, 750 F.3d at 1271 (emphasis added), citing *Dawson*, 390 F.3d at 1149-50. But the court noted that "corroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent." *Id.* at 1272, citing *Dawson*, *supra.*

The court concluded, however, that the facts of that case did not involve such egregious conduct that the plaintiffs were absolved from providing corroborating

evidence and affirmed the district court's finding that the plaintiffs did not suffer compensable emotional distress. *Id.* Thus, "[w]here a plaintiff comes forth with only blanket statements and a list of symptoms, courts in the Middle District of Florida have declined to award actual damages for emotional distress." *Lane v. Accredited Collection Agency Inc.*, No. 6:13-cv-530, 2014 U.S. Dist. LEXIS 59403, *20 (M.D. Fla. Apr. 28, 2014). Therefore, to support a claim of emotional distress as directed by *Lodge*, a plaintiff must offer: (1) corroborating medical testimony; or (2) corroborating non-expert testimony. The requirement for corroborating testimony is only excused when there is "egregious conduct" where "significant emotional distress is readily apparent." 750 F.3d at 1271-72.

Here, Plaintiff's claim of emotional distress suffers from the same fatal flaws as in *Lodge*. It is undisputed Plaintiff sought no medical treatment and never received any medical diagnosis. Plaintiff had identified her husband, Michael Connor, as a witness, but he ultimately never testified. (*See* Doc. 212, PageID 6080.) This is not a case of egregious conduct where emotional distress is "readily apparent," such that it absolved Plaintiff of the obligation to provide "corroborating evidence." *Lodge*, 750 F.3d at 1272. It had already been determined that Plaintiff was not harassed, a finding that remains undisturbed to this day. (*See* Doc. 85, PageID 3625-26.) There were no threats, no wrongful foreclosure, or anything of the like. Plaintiff was sent five auto-generated emails and DISH made two phone calls.

Absent any corroborating testimony, Plaintiff's claims of "worry," getting shaky/nervous, and even an elevated heart rate are not sufficient to demonstrate genuine emotional distress based on the nominal at-issue conduct in this case. *See, e.g.*, *Montgomery v. Fla. First Fin. Group, Inc.*, No. 6:06-cv-1639, 2008 U.S. Dist. LEXIS 115123, *22 (M.D. Fla. July 21, 2008) (finding that evidence of "loss of appetite, sleeplessness, and worry" were insufficient to establish emotional distress damages under the FCCPA); *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1079 (E.D. Cal. 2007) (finding claims that, inter alia, the plaintiff's hands would shake as a result of phone calls insufficient to demonstrate emotional distress under the FDCPA); *Simmons v. N. Am. Asset Investigation Bureau, LLC*, No. 1:07-cv-2477, 2008 U.S. Dist. LEXIS 134464, *8 (N.D. Ga. May 12, 2008) (collecting cases finding that testimony regarding anxiety, worry, nervousness, etc. is insufficient to establish genuine emotional distress); *Rodriguez v. Fla. First Fin. Grp.*, No. 6:06-cv-1678, 2009 U.S. Dist. LEXIS 132443, *14-15 (M.D. Fla. Feb. 12, 2009) (refusing to award actual damages under FCCPA for emotional distress from claimed "panic attacks" because it "did not result in hospitalizations or doctor visits, and [the p]laintiff did not miss work or suffer other lasting effects"). Given the facts of this case, "unsupported self-serving testimony by a plaintiff is not sufficient." *Simmons*, 2008 U.S. Dist. LEXIS 134464 at *5-6.

The need for meaningful corroborating evidence of alleged mental distress is particularly acute in claims where, like here, a plaintiff claims emotional distress based on low volume of communications. *Montgomery, Inc.*, 2008 U.S. Dist. LEXIS 115123, *18-22 (finding no emotional distress despite the defendant threatening six times it would have the plaintiff arrested); *Lane v*, 2014 U.S. Dist. LEXIS 58502, *19-20 (same); *Johnson v. Critical Resol. Mediation LLC*, No. 3:16-CV-632, 2017 U.S. Dist. LEXIS 91479 (M.D. Fla. Apr. 24, 2017) ("[O]ther than stating that she was [] 'starting to get scared and worried[,]'" Plaintiff failed to supply any competent 'evidence of medically significant physical symptoms'"); *Munoz v. CitiMortgage, Inc.*, No. 8:20-cv-2311, 2021 U.S. Dist. LEXIS 171911 (M.D. Fla. Sept. 10, 2021) (finding that the plaintiff's allegations of "psychological trauma and embarrassment" were not sufficient to support a claim for emotional distress).

### iii. Florida state law is in accord and gives "great weight" to federal court decisions in applying the FCCPA.

At trial, the Court expressed particular interest in any state law cases that mirror the above results from federal court. (Tr., Jury Trial – Day 3, Morning Session, pg. 15:4-15.) While there appears to be scant Florida state case law directly on point, the known authority supports DISH. "[A]nger and frustration are a part of life, and are not the types of harm that could support a mental anguish award." *Jackson v. Kleen 1, LLC*, 238 So. 3d 378 (Fla. DCA 3d 2017) (internal quotations, alterations, and citations omitted). In *Jackson*, the Third District affirmed the trial

court's entry of judgment as a matter of law in the defendant's favor in a discrimination case, finding that despite the plaintiff's testimony that he felt "'very bad,' 'angry,' and 'mad'" the plaintiff "offered no evidence in support of any emotional damages he allegedly suffered." *Id.* at 381.

Similarly to *Lodge*, Florida courts have excused corroborating evidence of emotional distress when the conduct of the defendant was extreme, such that distress could be reasonably supported by the plaintiff's own testimony. In *Ford Motor Credit Co. v. Sheehan*, 373 So. 2d 956 (Fla. DCA 1st 1979), the plaintiff testified that "he was extremely worried, upset, and nearly out of his mind for a continuous period of seven hours" after a debt collector falsely told him that his children were involved in a severe automobile accident. *Id.* at 959. The First District noted that the plaintiff's "testimony, *considered alone, is not proof of severe emotional distress*," but concluded that "when combined with the conduct of [the defendant], its submission to the jury was entirely appropriate." *Id.* (emphasis added).

Second, and as importantly, DISH respectfully submits that federal court decisions, and Eleventh Circuit precedent like *Lodge*, are an equally applicable source of authority. Certainly, a federal court with supplemental jurisdiction over a state law claim should look to state appellate or supreme court decisions. *See, e.g.*, *Bravo v. United States*, 577 F.3d 1324, 1325 (9th Cir. 2009).

However, the FCCPA is modeled after the federal Fair Debt Collection Practices Act ("FDCPA"). As such, "Florida courts must give 'great weight' to federal interpretations of the FDCPA when interpreting and applying the FCCPA." *See, e.g.*, *Bank of Am., N.A. v. Siefker*, 201 So. 3d 811, 813 (Fla. 4th DCA 2016), citing Fla. Stat. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to … the federal courts relating to the federal Fair Debt Collection Practices Act.").

Thus, given what appears to be the absence of an intermediate or Florida Supreme Court decision directly on point, and given that Florida state courts afford "great weight" to federal court decisions when applying the FCCPA, DISH respectfully suggests that the Court should follow the standards set forth by the Eleventh Circuit in *Lodge* and other cases which it has previously submitted and briefed with this Court. (*See, e.g.*, Docs. 257, 172, 137.)

If a plaintiff's testimony by itself were sufficient to support a claim of emotional distress like Plaintiff described here, particularly given the facts of a case such as this, the Eleventh Circuit would have ruled differently in *Lodge*. It did not.

## III.   <u>CONCLUSION</u>

Based on the foregoing facts and law, the Court should grant DISH's Renewed Motion for Judgment as a Matter of Law with respect to Count II, Punitive Damages, and Emotional Distress Damages.

Dated:  February 27, 2023

*/s/ Eric Larson Zalud*
ERIC LARSON ZALUD (*Pro Hac Vice*)
DAVID M. KRUEGER (*Pro Hac Vice*)
LAURA E. KOGAN (*Pro Hac Vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114
216-363-4178 Telephone
216-363-4588 Facsimile
ezalud@beneschlaw.com
dkrueger@beneschlaw.com
lkogan@beneschlaw.com

Josef Y. Rosen, Esq.
Florida Bar No. 112719
GrayRobinson, P.A.
401 E. Jackson Street, Suite 2700
P.O. Box 3324
Tampa, Florida  33601-3324
813-273-5000 Telephone
813- 273-5145 Facsimile
josef.rosen@gray-robinson.com

Roy S. Kobert, Esquire
Florida Bar No. 777153
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32802-3068
407- 843-8880 Telephone
407- 244-5690 Facsimile
roy.kobert@gray-robinson.com

*Attorneys for Defendant DISH Network L.L.C.*

## **LOCAL RULE 3.01(g) CERTIFICATION**

Counsel for DISH has conferred with counsel for Plaintiff, who has advised

that Plaintiff does not agree with the relief sought herein.

*/s/ Eric Larson Zalud*
Eric Larson Zalud
*Attorney for Defendant DISH Network*
*L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of February, 2023, I electronically filed the foregoing document with the Clerk of the Courts by CM/ECF.  I also certify that the foregoing document is being served this date on the following counsel of record in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

Ian R. Leavengood, Esq.
Michael J. Boyle, Esq
Philip M. Piazza, Esq
LEAVENLAW
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL  33703
consumerservice@leavenlaw.com
ileavengood@leavenlaw.com
mboyle@leavenlaw.com
ppiazza@leavenlaw.com

Charles Schropp, Esq.
Schropp Law Firm, P.A.
2309 MacDill Avenue, Suite101
Tampa, FL 33609
charles@schropplaw.com


*/s/ Eric Larson Zalud*
Eric Larson Zalud
*Attorney for Defendant DISH Network L.L.C.*